## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| INTERVET, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **4:08CV3042** |
| | ) | |
| MERIAL LIMITED and MERIAL SAS, | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| Defendants, | ) | |
| | ) | **(Related Case No. 1:06-CV-00658, U.S. District Court for the District of Columbia)** |
| DR. BRUCE BRODERSEN, and | ) | |
| UNIVERSITY OF NEBRASKA | ) | |
| BOARD OF REGENTS, | ) | |
| | ) | |
| Interested Parties. | ) | |

This matter is before the magistrate judge on the Motion [1] of defendants Merial Limited and Merial SAS (together, "Merial") to compel compliance with a subpoena it served on Dr. Bruce Brodersen.  Dr. Brodersen is a professor employed at the University of Nebraska - Lincoln by the University of Nebraska Board of Regents (collectively, the "University" or "UNL").

Merial has complied with NECivR 7.1(i), the matter has been fully briefed, and the court finds that Merial's motion should be granted, in part.

### BACKGROUND

The subpoena in question was issued by this court and served in conjunction with patent litigation[1] currently pending in the United States District Court for the District of

---

[1]*Intervet, Inc. v. Merial Limited and Merial SAS*, Case No. 1:06-CV-00658 (D.D.C.).

Columbia (the "DC Action") in which Merial claims that Intervet infringed Merial's U.S. Patent No. 6,368,601 (the '601 Patent) for a Porcine Circovirus (PCV) Type II vaccine. Merial alleges that Dr. Brodersen is a fact witness in the DC Action and that Dr. Brodersen and the University have documents concerning facts in the DC Action.

On or about January 9, 2008, Merial served a subpoena on Dr. Brodersen commanding the production of documents in Lincoln, Nebraska on January 18, 2008 and Dr. Brodersen's appearance at a deposition to be held in Washington, D.C. on February 8, 2008. On January 10, counsel for the University and Dr. Brodersen served objections to the subpoena pursuant to Fed. R. Civ. P. 45(c) because (1) no attendance or mileage fees were tendered to Dr. Brodersen; (2) the subpoena did not allow a reasonable time for compliance, made no provision for payment of significant expenses, and commanded the production of documents from Dr. Brodersen which are the property of the Board of Regents; (3) the subpoena required Dr. Brodersen to travel to a deposition at a place more than 100 miles from his place of residence; (4) the subpoena contemplated the disclosure of opinions and information of an unretained expert; and (5) compliance with the subpoena would subject Dr. Brodersen and the Board of Regents to an undue burden.

In response, Merial requested more information as to "undue burden" and advised the University that it was "willing to agree to extend the application of the Brodersen subpoena to the University," and would "consider alternative locations more convenient to Dr. Brodersen and his counsel."

Merial and the University did not reach an agreement on these issues and Merial filed the instant motion on March 5, 2008, seeking to compel compliance with the January 9, 2008 subpoena. The University and Dr. Brodersen filed a responsive brief and evidence index on the morning of March 18, 2008 (Filings 19 & 20), contending that the subpoena should be quashed. Intervet also filed a responsive brief and evidence index (Filings 25 & 26).

On March 28, 2008, Merial submitted in reply a brief and evidence index showing that, on approximately March 19, 2008, Merial served new subpoenas (Filing 36, Exhibits 22 & 23)

- on Dr. Brodersen, commanding him to produce 11 categories of documents and appear for deposition on April 2, 2008 in Lincoln, Nebraska, and

- on the University of Nebraska - Lincoln, commanding it to produce the 11 categories of documents designated in the Brodersen subpoena.

The new subpoenas were intended to correct the deficiencies raised in opposition to the subpoena originally served on Dr. Brodersen.[2]

The University and Dr. Brodersen objected to the subpoenas, advising they were "not willing to comply with these subpoenas for reasons stated in the materials submitted in opposition to Merial's motion to compel in *Intervet, Inc. v. Merial Limited and Merial SAS*,

---

[2]In the interests of judicial economy, the court will assume that Merial wishes to go forward with the new subpoenas instead of the original subpoena served on Dr. Brodersen.

United States District Court of the District of Nebraska Case 4:08cv3042."[3]  In other words, the University and Dr. Brodersen contend that the subpoena should be quashed pursuant to Federal Rules of Civil Procedure 26(b)(4)(B) and 45(c)(3).

## LEGAL ANALYSIS

### A.  Relevance

Under Fed. R. Civ. P. 26(b)(1), the scope of discovery is limited to nonprivileged matters relevant to the parties' claims or defenses; however, for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. "Relevant" information need not be admissible at trial, if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  *Id*.  "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party."  *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) (footnotes omitted).

---

[3]In Case No. 4:08cv3042, this court quashed a subpoena served by Merial on UNL Professor Fernando Able Osorio, who had provided a declaration in support of Intervet's motion for preliminary injunction in a separate but related case.  Dr. Osorio was a consulting expert retained by Intervet.  Briefly, the court found that Dr. Osorio was entitled to protection under Rules 26(b)(4)(B) and 45(c)(3)(B)(ii) of the Federal Rules of Civil Procedure.  *See Intervet, Inc. v. Merial Ltd.*, No. 4:08cv3042, 2007 WL 1797643 (June 20, 2007) (Order of Magistrate Judge), *aff'd*, 2007 WL 2344815 (D. Neb., Aug. 15, 2007).

Merial initially filed evidence showing that, in March 1998, Dr. Brodersen forwarded to Intervet's Dr. Richard Hesse an article entitled, "Isolation of circovirus from lesions of pigs with postweaning multisystemic wasting syndrome." *See* Filing 5, Ex. 20.  Documents prepared between September 2001 and January 2007 indicate that Dr. Brodersen provided the initial tissue samples to Intervet for the development of its PCV Type II vaccine:

> The source of the ORF2 gene is a PCV 2 virus that was isolated at Intervet-Dallas Center, Iowa from lung tissue of a feeder pig with a clinical case of postweaning multisystemic wasting syndrome (PMWS).  The lung tissue was sent to us as part of a collaborative effort by Dr. Bruce Brodersen at the University of Nebraska Veterinary Diagnostic Laboratory.

*See* Filing 15, Exhibits 9-19.  The procurement of the infected lung tissue was the first important step in developing Intervet's product.  Subsequent confirmatory testing for PCV in selected tissue samples was conducted, and all tissue homogenates were tested for *Mycoplasma hyopmeunomia*, at the UNL Veterinary Diagnostic Laboratory.  Dr. Brodersen provided a summary report of his pathology related observations and signed the "Mycoplasma speciation PCR results" submitted on July 18, 2003 to Dr. Hesse at Intervet. *See, e.g.*, Filing 5, Ex. 6 at pp. 32-33.

Dr. Brodersen's responsive affidavit (Filing 19, Ex. 23) describes the nature of his work at UNL:

> As part of my employment at UNL I have developed expertise in the diagnosis of porcine circovirus (PCV) serotypes Type I and Type II.  I have taken tissue samples from animals infected with PCV since 1997 to carry out my University research and service job responsibilities.  All of the documents and objects that I have created or acquired that pertain to PCV are kept in my office.  All of the PCV documents and objects in my office belong to UNL,

-5-

they are not my personal property.  I have not kept any PCV documents or objects at home.

From 1998 to 1999, as part of my University employment, I provided PCV tissue to Dr. Richard Hesse, Manager of Virology Biologics, Research and Development for Intervet Inc.  I also provided Intervet Inc. with copies of all documents pertaining to the PCV tissue that I sent to Dr. Hesse.

In 2002, I visited an Intervet facility in Worthington, MN and conducted swine postmortem examinations.  I left the originals of all the documents and objects associated with my activities in Worthington at the Intervet facility with Intervet.

Although I have expert knowledge regarding PCV, I have not worked on the development of PCV vaccines.

On February 29, 2008, Dr. Hesse testified at his deposition (Filing 26, Ex. A at pp. 66-77) that Dr. Brodersen provided tissue samples for Intervet to isolate a virus.  "You have to have the tissues before you can isolate the virus."  According to Dr. Hesse, Dr. Brodersen did not participate in the virus isolation or in vaccine development; virus isolation is a separate event from vaccine development, and developing a vaccine requires a series of steps totally different from virus isolation.

The supplemental evidence filed by Merial in reply (Filing 35), however, demonstrates that Dr. Brodersen maintained steady contact with Dr. Hesse from at least 1997 through 2003 on matters relating to porcine circovirus studies.  During this time period, Dr. Brodersen and Dr. Hesse were listed on several documents or research proposal summaries as principal investigators relating to porcine circovirus.  On several occasions between December 1997 and 2003 Dr. Brodersen provided Intervet and/or Dr. Hesse with research and test results

regarding the porcine circovirus, its isolation, and its response to antiserum. Dr. Brodersen provided Intervet with antiserum relating to PCV. On June 30, 2003, Dr. Brodersen wrote to Dr. Hesse regarding "Results from PCV vaccine study," forwarding research and test results. (Filing 36, Ex. 30). Dr. Hesse acknowledged during his deposition that Dr. Brodersen had provided Intervet with PCV antisera.

The court has carefully considered all the evidentiary materials submitted by all parties and concludes that Dr. Brodersen was involved, however tangentially, in the development of Intervet's vaccine. The information sought by Merial from the University and Dr. Brodersen is "relevant," within the meaning of Fed. R. Civ. P. 26(b)(1), to the claims and defenses raised in the underlying litigation.

### B.  Protection Under Rule 45(c)(3)

Fed. R. Civ. P. 45(c)(3) allows the court to protect a person subject to or affected by a subpoena by quashing or modifying the subpoena if the subpoena requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party[.]"  Rule 45(c)(3)(B)(ii).

Unlike Dr. Osorio in Case No. 4:08cv3042, *see* n.3, *supra*, Dr. Brodersen has never been retained by Intervet as an expert, and Merial has amply demonstrated why it wishes to examine Dr. Brodersen as a fact witness. It appears that Merial wishes to depose Dr. Brodersen about the studies or work he performed at the request of Intervet in furtherance

-7-

of the development of Intervet's PCV vaccine.  Thus, the court finds that Merial should be allowed to depose Dr. Brodersen on these limited topics.

### C.  Undue Burden and Expense

The documents under subpoena are the property of the University.  The University has proffered the Affidavit of Turan Paul Odabasi, J.D., in support of its objections based on undue burden.  Merial's document requests do encompass the time period from 1998 through the present, but that is the relevant time period for this particular litigation.

The court is concerned about the breadth of the requests.  The court finds that the University should be required to produce responsive documents, but only to the extent that the materials pertain to the porcine circovirus work performed by or at the direction of Dr. Brodersen and supplied to Intervet.

If it is necessary for Dr. Brodersen or the University to assert a privilege or claim of protection as to any responsive documents, they shall disclose the following information:  a description of each document withheld with as much specificity as is practicable without disclosing its contents, including (a) the general nature of the document; (b) the identity and position of its author; (c) the date it was written; (d) the identity and position of its addressee; (e) the identities and positions of all persons who were given or have received copies of it and the dates copies were received by them; (f) the document's present location and the identity and position of its custodian; and (g) the specific reason or reasons why it has been withheld from production or disclosure.

The court is persuaded that most, if not all, of these materials may have already been supplied to Merial by Intervet.   Because Rule 45 requires the court to protect non-parties from significant expense resulting from the inspection and copying commanded, I find that Merial should be required to bear all costs of production exceeding $500.00.

## CONCLUSION

In summary, the court understands that Merial wishes to compel compliance with the new subpoenas it served on Dr. Brodersen and the University on or about March 19, 2008 rather than the subpoena originally served on Dr. Brodersen.   The court finds that the information sought by Merial from Dr. Brodersen and the University is relevant to the issues and defenses raised by Merial and Intervet in the DC Action.

Merial will be allowed to depose Dr. Brodersen as a fact witness, in strict compliance with all requirements of Fed. R. Civ. P. 45.   The topics of inquiry shall be limited to the studies or work Dr. Brodersen performed at the request of Intervet in furtherance of the development of Intervet's PCV vaccine.

The University shall produce responsive documents, but only to the extent that the materials pertain to the porcine circovirus work performed by or at the direction of Dr. Brodersen and supplied to Intervet.   Merial shall bear all costs of document production exceeding $500.00.

## ORDER

**IT IS ORDERED** that the defendants' Motion to Compel [1] is granted, in part, in accordance with this Memorandum and Order.   The defendants may serve amended subpoenas, if necessary.

Pursuant to NECivR 72.2, a party may appeal this order by filing an "Appeal of Magistrate Judge's Order" within **ten (10) business days** after being served with the order. The party shall specifically state the order or portion thereof appealed from and the basis of the appeal. The appealing party shall file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly erroneous or contrary to law.   The filing of a statement of appeal does not automatically stay the magistrate judge's order pending appeal.  *See* NECivR 72.2(d).

**DATED April 21, 2008.**

**BY THE COURT:**

**s/ F.A. Gossett**
**United States Magistrate Judge**